The BEAL FOUNDATION,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 76–1277.

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1977.

Rehearing Denied Oct. 21, 1977.

---

W. B. Browder, Jr., Rodney W. Satterwhite, Robert J. Cowan, Hal L. Kempf, Midland, Tex., for plaintiff-appellant.

John E. Clark, U. S. Atty., San Antonio, Tex., Scott P. Crampton, Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Gilbert E. Andrews, Acting Chief, Appellate Section, Jonathan S. Cohen, George G. Wolf, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before BROWN, Chief Judge, and COLEMAN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The question for decision in this case is whether the district court erred in granting the government's motion for summary judgment in taxpayer's suit for tax refund. The facts are not disputed. The legal issue presented, however, is the validity of an IRS regulation requiring that a cost basis be used in determining the depletion deduction allowed a charitable organization for computation of net investment income. Because the regulation is entirely consistent with the statute it interprets, we affirm.

The following facts are gleaned from the record and are not in dispute. Taxpayer is a Texas non-profit charitable institution exempt from income tax pursuant to § 501(c)(3),[1] Internal Revenue Code of 1954. Additionally, taxpayer is a "private foundation" as defined by § 509(a)[2] of the Code. A substantial portion of taxpayer's income is generated by overriding royalty interests in oil and gas acquired by taxpayer in 1963 as gifts. At the time of donation, the donor's adjusted bases in the royalty interests were zero. In 1970, these royalty interests generated $67,875 in gross income for taxpayer.

In its tax return for 1970, taxpayer reported $64,379 net investment income generated by the royalty interests. Pursuant to § 4940[3] of the Code, taxpayer paid 4% excise tax on its net investment income in

---

1. On July 1, 1963, the Beal Foundation was granted exempt status from federal income taxation under 26 U.S.C. § 501(c)(3).

2. On November 27, 1970, the Beal Foundation was ruled to be a private foundation within the meaning of 26 U.S.C. § 509(a).

3. 26 U.S.C. § 4940. Excise tax based on investment income

  (a) Tax-exempt foundations.—There is hereby imposed on each private foundation which is exempt from taxation under section 501(a) for the taxable year, with respect to the carrying on of its activities, a tax equal to 4 percent of the net investment income of such foundation for the taxable year.

    \*    \*    \*    \*    \*    \*

  (c) Net investment income defined.—

  (1) In general.—For purposes of subsection (a), the net investment income is the amount by which (A) the sum of the gross investment income and the capital gain net exceeds (B) the deductions allowed by paragraph (3). Except to the extent inconsistent with the provisions of this section, net investment income shall be determined under the principles of subtitle A.

  (2) Gross investment income.—For purposes of paragraph (1), the term "gross investment income" means the gross amount of income from interest, dividends, rents, and royalties, but not including any such income to the extent included in computing the tax imposed by section 511.

the amount of $2,575. In 1972, however, taxpayer claimed a refund of $1,047 and interest generated by a previously unclaimed depletion deduction of $26,175 to its 1970 gross income. After waiving notice of claim disallowance, taxpayer filed this action for the partial refund of the excise tax paid in 1970.

Taxpayer premised its recovery on the ground that a Treasury regulation interpreting § 4940 erroneously required a cost basis for depletion rather than fair market value as of December 31, 1969. Taxpayer asserted that the regulation was inconsistent with the plain meaning of the underlying statute and was unreasonable. There being no dispute as to the underlying facts, the district court entertained cross motions for summary judgment. The district court then held that the regulation was valid and denied the refund, occasioning taxpayer's appeal.

This is a case of first impression. The legal issue presented is the validity of Treasury regulation § 53.4940–1(e)(2)iii[4] prescribing a "cost" or "substituted basis" to be used in calculating the depletion deduction available in determining a charitable organization's net investment income. Taxpayer claims that the regulation conflicts

with § 4940(c)(4)(B) prescribing a fair market basis for the determination of gain on the disposition of property held by a charitable organization.

▮ In order to successfully challenge the validity of a regulation the taxpayer bears the burden of overcoming the presumption that the regulation is valid. The Supreme Court has declared that ". . . Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with the administration of these statutes which should not be overruled except for weighty reasons." *Commissioner of Internal Revenue v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948). *See also Fawcus Machine Co. v. United States*, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397 (1930).

Because the conflicting claims of taxpayer and the government are complex and depend upon the framework of the Code, it is necessary to examine the statutes that give rise to the conflict.

Section 4940 requires tax-exempt charitable foundations to pay 4% excise tax on

---

(3) Deductions.—

(A) *In general.*—For purposes of paragraph (1), there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property held for the production of such income, determined with the modifications set forth in subparagraph (B).

(B) Modifications.—For purposes of subparagraph (A)—

(i) The deduction *provided by section 167* shall be allowed, but only on the basis of the straight line method of depreciation.

(ii) The deduction for depletion provided by section 611 shall be allowed, but such deduction shall be determined without regard to section 613 (relating to percentage depletion).

(4) Capital gains and losses.—For purposes of paragraph (1) in determining net capital gain—

(A) There shall be taken into account only gains and losses from the sale or other disposition of property used for the production of interest, dividends, rents, and royalties, and property used for the production of income included in computing the tax imposed by sec-

tion 511 (except to the extent gain or loss from the sale or other disposition of such property is taken into account for purposes of such tax).

(B) The basis for determining gain in the case of property held by the private foundation on December 31, 1969, and continuously thereafter to the date of its disposition shall be deemed to be not less than the fair market value *of such property on December 31, 1969.*

**4.** 26 C.F.R. § 53–4940–1(e)(2)(iii) provides in its relevant part as follows:

(iii) The basis to be used for purposes of the deduction allowed for depreciation or depletion shall be the basis determined under the rules of Part II of subchapter O of chapter 1, subject to the provisions of section 4940(c)(3)(B), and without regard to section 4940(c)(4)(B), relating to the basis for determining gain, or section 362(c). Thus, a private foundation must reduce the cost or other substituted or transferred basis by an amount equal to the straight line depreciation or cost depletion, without regard to whether the foundation deducted such depreciation or depletion during the period prior to its first taxable year. . . .

their net investment income. The purpose of the excise tax is to defray the administrative expense of enforcing the tax laws concerning charitable organizations. Section 4940(c)(1) defines net investment income as follows:

(1) *In general.*—For purposes of subsection (a), the net investment income is the amount by which (A) the sum of the gross investment income and the capital gain net exceeds (B) the deductions allowed by paragraph (3). *Except to the extent inconsistent with the provisions of this section, net investment income shall be determined under the principles of subtitle A.* (Emphasis added.)

Thus, from the plain language of the statute, in order to determine what constitutes net investment income, the provisions of subtitle A are to be used. If the use of subtitle A in any of its specifics conflicts with a result required under another provision of § 4940, however, then the provision of § 4940 should control.

Permitted deductions to gross investment income are specified in § 4940(c)(3). For purposes of determining net investment income, the provision recognizes deductions which are normally permitted for those engaged in the production of income. Section 4940(c)(3)(B) contains two limitations, however, to the use of "usual" deductions. First, depreciation deductions pursuant to § 167 are limited to those arising under the straight line method. Second, and more germane to the instant case, a depletion deduction is permitted pursuant to § 611.[5] But the deduction shall not be determined with regard to § 613 (percentage depletion).

The prohibition of the use of § 613 provides an illuminating example of the framework of § 4940. According to the methodology of § 4940(c)(1) if a charitable foundation wished to avail itself of a depletion deduction, it would be permitted under § 4940(c)(3)(B)(ii). Under the normal scheme of subtitle A, the depletion allowance under § 611 could not be less than that specified by § 613.[6] Because such a use of § 613 conflicts with § 4940(c)(3)(B)(ii), however, § 4940(c)(1) requires that § 4940(c)(3)(B)(ii) control, and the depletion deduction is calculated only with regard to § 611. Subtitle A then takes over and requires that the basis available for depletion is to be determined according to § 612.

At this point in the labyrinths of the Code, the paths and positions of taxpayer and government diverge. According to § 53.4940–1, the basis available to the foundation is the adjusted basis determined in accordance with § 1011, as provided by § 612.[7] Inexorably proceeding, § 1011 requires, in the instant case, application of § 1015 [8] to determine the basis of property acquired by gift. Section 1015 provides that the basis of the property shall be the

---

**5.** 26 U.S.C. § 611 provides in part:

(a) *General rule.*—In the case of mines, oil and gas wells, other natural deposits, and timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary or his delegate. For purposes of this part, the term "mines" includes deposits of waste or residue, the extraction of ores or minerals from which is treated as mining under section 613(c). In any case in which it is ascertained as a result of operations or of development work that the recoverable units are greater or less than the prior estimate thereof, then such prior estimate (but not the basis for depletion) shall be revised and the allowance under this section for subsequent taxable years shall be based on such revised estimate.

**6.** 26 U.S.C. § 613(a) provides in part . . .
In no case shall the allowance for depletion under section 611 be less than it would be if computed without reference to this section.

**7.** 26 U.S.C. § 612. *Basis for cost depletion.*
Except as otherwise provided in this subchapter, the basis on which depletion is to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain upon the sale or other disposition of such property.

**8.** 26 U.S.C. § 1015 provides in part:
(a) *Gifts after December 31, 1920.*—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period before the date of the gift as provided in section 1016) is greater than the fair market

adjusted basis of the property in the hands of donor prior to the transfer. Application of this "substitute basis" rule results in taxpayer having a zero basis available for depletion because the property had been fully cost-depleted by the donor. Because taxpayer's basis is zero, application of § 612 and § 611 results in a zero depletion deduction. Therefore, according to the regulation, the depletion deduction is permitted to the charitable foundation but only to the extent of cost,[9] if the property were purchased, or the basis of the donor, if the property was acquired by gift.

Taxpayer claims that the regulation is in irreconcilable conflict with the provisions of § 4940. Essentially, taxpayer contends that the use of "substitute basis" conflicts with § 4940(c)(4)(B) and, therefore, § 4940(c)(4)(B) must control, as required by § 4940(c)(1). Section 4940(c)(4)(B) provides in pertinent part:

(4) *Capital gains and losses.*—For purposes of paragraph (1) in determining capital gain net income—

. . . . .

(B) The basis for determining gain in the case of property held by the private foundation on December 31, 1969, and continuously thereafter to the date of its disposition shall be deemed to be not less than the fair market value of such property on December 31, 1969.

According to taxpayer's construction of the statute, because § 612 provides that the basis for gain on the sale of property shall be the basis used for calculating depletion, § 4940(c)(4)(B) applies rather than § 1011. Taxpayer argues that § 4940(c)(4)(B) does

value of the property at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. . . .

9. 26 U.S.C. § 1012 provides a cost basis for determination of gain from the sale of property acquired by purchase.

10. The fair market value of taxpayer's royalty interest was a contested fact below. Taxpayer claimed a fair market value of $400,000 based upon estimated reserves. The service, however, claimed a value of $300,000 based upon a lower estimation of reserves and price. As found by the district court, however, the issue

provide the basis for determining gain, and the basis provided is the fair market value. Because the § 1015 substituted basis conflicts with § 4940(c)(4)(B), § 4940(c)(4)(B) controls. Therefore, taxpayer would be able to use a $400,000 [10] basis for depletion resulting in a depletion deduction of $26,-820. Allowance of the deduction would reduce taxpayer's net investment income thereby generating a refund for the 4% excise tax.

■ In light of the clear statutory language taxpayer's contention must fail, and we therefore hold that the regulation is valid. Taxpayer fails to overcome the language of § 4940(c)(4) that limits the applicability of § 4940(c)(4)(B) to the determination of net capital gain. According to the plain meaning of § 4940(c)(4), the market value of taxpayer's interest is only to be used in § 4940(c)(1) to determine now much net capital gain is to be included in net investment income. By the section's language, market value basis is limited to use in determining net capital gain. Its use to determine a basis for depletion deduction is plainly outside that limitation. Had the section provided "For the purposes of paragraph (1)" taxpayer's contention would have more merit. The limitation "in determining net capital gain" exists, however, and with those words taxpayer's argument must fail.

■ In addition to the claim of inconsistency, taxpayer claims that the regulation is unreasonable.[11] As we have demonstrated, however, the regulation is not only consistent with the statute, the regulation is compelled by the statute. The regulation only states the result of the operation of the

need not be resolved because of our disposition of the case.

11. Taxpayer bases the greater part of its argument on the interplay of the contested regulation with § 4942. Section 4942 penalizes charitable institutions for failure to distribute all of its net investment income. Net investment income is computed under § 4942 by incorporation by reference of § 4940(c)(3)(B). Therefore, as taxpayer contends, under § 4942, taxpayer would be required to pay out its entire net investment income with no deduction for depletion. Taxpayer contends that this would result in its disappearance because it would be unable

statutory framework. When a regulation is so consistent as to be compelled by the statute, it would be impossible to hold that the regulation is unreasonable unless we would be prepared to hold the statute unreasonable as well. The unreasonableness of the statute has been neither claimed nor argued.

Taxpayer also advances the claim that the regulation is unconstitutional as violative of the Sixteenth Amendment. This claim would more correctly attack the constitutionality of the statute rather than the regulation. Construing the claim as an attack on the statute avails the taxpayer little. Taxpayer neither provides authority for its position for advances a cogent theory of unconstitutionality. Under the circumstances we find taxpayer's claim meritless. First, the depletion deduction is a matter of legislative grace, *Parsons v. Smith*, 359 U.S. 215, 219, 79 S.Ct. 656, 3 L.Ed.2d 747 (1959), not constitutionally compelled. Additionally, the purpose for the depletion deduction is the recovery of cost or investment, *Parsons v. Smith, supra* at 220, 79 S.Ct. 656. Taxpayer, however, had no investment or cost in the royalty interest to recover.

AFFIRMED.

to replenish its corpus. Although our holding may possibly contribute to the result complained of, the applicability of § 4942 is not at issue in this case and is therefore not decided.