Ruth E. and Ralph Friedman Foundation, Inc.,
Petitioner v. Commissioner of Internal Revenue,
Respondent

Docket No. 234–76.     Filed October 19, 1978.

*Frederick M. Bruell* and *Jesse Fishkin,* for the petitioner.
*Richard S. Kestenbaum,* for the respondent.

OPINION

Chabot, *Judge:* * Respondent determined a deficiency of $1,217 in petitioner's excise tax under section 4940(a)[1] for the calendar year 1973.

Two issues are presented for our consideration in this case, as follows:

Firstly, whether any gain on the sale of certain stock by petitioner is subject to the 4-percent excise tax on investment income of tax-exempt private foundations.

Secondly, if any such gain is so taxable, what petitioner's basis is in the stock.

The case was submitted on the pleadings and a stipulation of facts; the stipulation and the stipulated exhibit are incorporated herein by this reference.

When the petition in this case was filed, petitioner's principal place of business was in Hempstead, N. Y.

During 1973, petitioner was a tax-exempt private foundation subject to tax on its net investment income under section 4940(a).

On November 14, 1973, Ralph Friedman (hereinafter referred

---

*By order dated Apr. 17, 1978, the Chief Judge reassigned this case from Judge Charles R. Simpson to Judge Herbert L. Chabot for disposition.

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954, as in effect for the taxable year in issue.

to as Ralph), petitioner's president, and Ralph's wife, Ruth Friedman (hereinafter referred to as Ruth), contributed Kerr McGee Corp. stock to petitioner, in the amounts and with the bases and fair market values indicated in the following table:

| Donor | Number of shares | Aggregate basis in donor's hands | Aggregate fair market value Dec. 31, 1969 | Nov. 14, 1973 |
|---|---|---|---|---|
| Ralph | 157 | $1,046 | $4,667 | $14,562 |
| Ruth | 177 | 1,662 | 5,262 | 16,417 |
| Totals | 334 | 2,708 | 9,929 | 30,979 |

Both Ralph and Ruth had acquired the contributed shares before December 31, 1969.

The 334 shares of Kerr McGee Corp. acquired from Ralph and Ruth were sold by petitioner in part on December 4, 1973, and the remaining shares on December 11, 1973, for a total of $30,804. Petitioner then made contributions between December 11 and December 31, 1973, of $25,875 to "recognized charitable organizations" and contributed the balance of the sales proceeds to "recognized charitable organizations" in 1974. Ralph and Ruth deducted $30,979 on their 1973 joint individual income tax return, on account of their gifts of the Kerr McGee Corp. stock to petitioner.[2]

The Kerr McGee Corp. stock sold by petitioner is property of a type which generally produces interest, dividends, rents, royalties, or capital gains through appreciation.

## 1. *Taxability of the Sale*

Petitioner maintains that the shares of stock sold by it do not fall within the statutory description of property the gains from the sale of which are subject to tax under section 4940; namely, "property used for the production of interest, dividends, rents, and royalties." Petitioner asserts the invalidity of Treasury Department regulations which provide for taxation of gains from the sale of property of a type which generally produces interest, dividends, rents, royalties, or capital gains through

[2]Sec. 170(e)(1)(B) provides that, except that under certain circumstances, in the case of a gift of appreciated property to a private foundation, the charitable contribution deduction is reduced by one-half of the unrealized appreciation. One exception to this rule is a gift of appreciated property to a private foundation which, in accordance with sec. 170(b)(1)(E)(ii), distributes an amount equal to the entire contribution by the 15th day of the 3rd month after the year in which the contribution is received.

appreciation, even though the property is disposed of by the foundation immediately upon its receipt. Respondent maintains that the regulations are valid and so any gain from the sale of the stock is subject to tax under section 4940.

We agree with respondent.

*The tax.*—Section 4940(a)[3] imposes an excise tax of 4 percent of petitioner's "net investment income." Section 4940(c)(1)[4] defines net investment income in terms of "gross investment income" and "net capital gain."[5] Section 4940(c)(2)[6] defines gross investment income as income from interest, dividends, rents, and royalties. Section 4940(c)(4)[7] provides that net capital gain

---

[3]SEC. 4940. EXCISE TAX BASED ON INVESTMENT INCOME.

(a) TAX-EXEMPT FOUNDATIONS.—There is hereby imposed on each private foundation which is exempt from taxation under section 501(a) for the taxable year, with respect to the carrying on of its activities, a tax equal to 4 percent of the net investment income of such foundation for the taxable year.

[4]SEC. 4940. EXCISE TAX BASED ON INVESTMENT INCOME.

(c) NET INVESTMENT INCOME DEFINED.—

(1) IN GENERAL.—For purposes of subsection (a), the net investment income is the amount by which (A) the sum of the gross investment income and the net capital gain exceeds (B) the deductions allowed by paragraph (3). Except to the extent inconsistent with the provisions of this section, net investment income shall be determined under the principles of subtitle A.

See n. 5 *infra,* for subsequent amendment.

[5]Sec. 1901(b)(33)(N), Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1802, changed the term "net capital gain" to "capital gain net income" for taxable years beginning after Dec. 31, 1976 (sec. 1901(d) of the 1976 Act, 90 Stat. 1803). This was a change in terminology only.

[6]SEC. 4940. EXCISE TAX BASED ON INVESTMENT INCOME.

(c) NET INVESTMENT INCOME DEFINED.—

\*          \*          \*          \*          \*          \*          \*

(2) GROSS INVESTMENT INCOME.—For purposes of paragraph (1), the term "gross investment income" means the gross amount of income from interest, dividends, rents, and royalties, but not including any such income to the extent included in computing the tax imposed by section 511.

The subsequent amendment of this provision by sec. 2(a)(4), Pub. L. 95–345 (Aug. 15, 1978, 92 Stat. 481) does not affect the taxable year before us (see sec. 2(e) of the 1978 Act, 92 Stat. 483). This amendment adds "payments with respect to securities loans (as defined in section 512(a)(5))," after "rents."

[7]SEC. 4940. EXCISE TAX BASED ON INVESTMENT INCOME.

(c) NET INVESTMENT INCOME DEFINED.—

\*          \*          \*          \*          \*          \*          \*

(4) CAPITAL GAINS AND LOSSES.—For purposes of paragraph (1) in determining net capital gain—

(A) There shall be taken into account only gains and losses from the sale or other disposition of property used for the production of interest, dividends, rents, and royalties, and property used for the production of income included in computing the tax imposed by section 511 (except to the extent gain or loss from the sale or other disposition of such property is taken into account for purposes of such tax).

(B) The basis for determining gain in the case of property held by the private foundation on December 31, 1969, and continuously thereafter to the date of its disposition shall be deemed to be not less than the fair market value of such property on December 31, 1969.

(C) Losses from sales or other dispositions of property shall be allowed only to the extent of gains from such sales or other dispositions, and there shall be no capital loss carryovers.

See n. 5 *supra,* for subsequent amendment.

includes "only gains and losses from the sale or other disposition of property used for the production of interest, dividends, rents, and royalties," and certain other property involved in the tax on unrelated business income.

This is a case of first impression. Before analyzing the regulation here at issue, it may be appropriate to briefly describe some of the context within which this private foundation excise tax operates.

*The matrix.*—Section 4942 requires each private foundation (if it is not a private operating foundation) to spend for charitable purposes the greater of its adjusted net income[8] or a percentage of the fair market value of the foundation's noncharitable assets. The noncharitable assets are described in section 4942(e)(1)(A)(i) as "all assets of the foundation other than those being used (or held for use) directly in carrying out the foundation's exempt purpose."[9]

Section 4944 (successor to sec. 504(a)(3), see n. 8 *supra*) prohibits investments which jeopardize the carrying out of the foundation's exempt purposes. Section 4944(c)[10] exempts from this prohibition any investment which is made to accomplish charitable purposes, but only if "no significant purpose of [the investment] is the production of income or the appreciation of property."

Section 4943 requires private foundations to divest themselves of "excess business holdings." In determining whether an activity is a business enterprise (and, therefore, whether an investment in it might be an excess business holding), section 4943(d)(4)[11] provides that a trade or business which derives at

---

[8]In this respect, sec. 4942 may be viewed as the successor to sec. 504(a)(1). Sec. 504 was repealed by sec. 101(j)(15), Tax Reform Act of 1969, 83 Stat. 527.

[9]The subsequent amendment of this provision by sec. 1303, Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1715, affects neither the issue nor the taxable year before us. The quoted language now appears as subpar. (A) of sec. 4942(e)(1).

[10]SEC. 4944. TAXES ON INVESTMENTS WHICH JEOPARDIZE CHARITABLE PURPOSE.

(c) EXCEPTION FOR PROGRAM-RELATED INVESTMENTS.—For purposes of this section, investments, the primary purpose of which is to accomplish one or more of the purposes described in section 170(c)(2)(B), and no significant purpose of which is the production of income or the appreciation of property, shall not be considered as investments which jeopardize the carrying out of exempt purposes.

[11]SEC. 4943. TAXES ON EXCESS BUSINESS HOLDINGS.

(d) DEFINITIONS; SPECIAL RULES.—For purposes of this section—

* * * * * * *

(4) BUSINESS ENTERPRISE.—The term "business enterprise" does not include—

(A) a functionally related business (as defined in section 4942(j)(5)), or

least 95 percent of its gross income from passive sources is not a business enterprise. "Passive sources" is defined to include certain types of income exempt from the tax on unrelated business income. The particular types of passive income referred to are those that are excluded from the tax on unrelated business income by paragraphs (1), (2), (3), and (5) of section 512(b).[12] These provisions exclude dividends, interest, annuities, royalties, rents under certain circumstances, and capital gains.

Section 509(a) defines the term "private foundation." Certain

---

(B) a trade or business at least 95 percent of the gross income of which is derived from passive sources.

For purposes of subparagraph (B), gross income from passive sources includes the items excluded by section 512(b)(1), (2), (3), and (5), and income from the sale of goods (including charges or costs passed on at cost to purchasers of such goods or income received in settlement of a dispute concerning or in lieu of the exercise of the right to sell such goods) if the seller does not manufacture, produce, physically receive or deliver, negotiate sales of, or maintain inventories in such goods.

[12]SEC. 512. UNRELATED BUSINESS TAXABLE INCOME.

(b) MODIFICATIONS.* * *

(1) There shall be excluded all dividends, interest, and annuities, and all deductions directly connected with such income.

(2) There shall be excluded all royalties (including overriding royalties) whether measured by production or by gross or taxable income from the property, and all deductions directly connected with such income.

(3) In the case of rents—

(A) Except as provided in subparagraph (B), there shall be excluded—

(i) all rents from real property (including property described in section 1245(a)(3)(C)), and

(ii) all rents from personal property (inlcuding for purposes of this paragraph as personal property any property described in section 1245(a)(3)(B)) leased with such real property, if the rents attributable to such personal property are an incidental amount of the total rents received or accrued under the lease, determined at the time the personal property is placed in service.

(B) Subparagraph (A) shall not apply—

(i) if more than 50 percent of the total rent received or accrued under the lease is attributable to personal property described in subparagraph (A)(ii), or

(ii) if the determination of the amount of such rent depends in whole or in part on the income or profits derived by any person from the property leased (other than an amount based on a fixed percentage or percentages of receipts or sales).

(C) There shall be excluded all deductions directly connected with rents excluded under subparagraph (A).

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(5) There shall be excluded all gains or losses from the sale, exchange, or other disposition of property other than—

(A) stock in trade or other property of a kind which would properly be includible in inventory if on hand at the close of the taxable year, or

(B) property held primarily for sale to customers in the ordinary course of the trade or business.

This paragraph shall not apply with respect to the cutting of timber which is considered, on the application of section 631, as a sale or exchange of such timber.

The subsequent amendments of pars. (1) and (5) by sec. 2(a)(2), Pub. L. 95-345 (Aug. 15, 1978, 92 Stat. 481) and subsec. (a) of sec. 1, Pub. L. 94-396 (Sept. 3, 1976, 90 Stat. 1201), respectively, do not affect the taxable year before us (see sec. 2(e) of the 1978 Act, 92 Stat. 483 and subsec. (b) of sec. 1 of the 1976 Act, 90 Stat. 1201, respectively).

types of publicly-supported organizations are not treated as private foundations. However, under section 509(a)(2)(B), in order to be excluded from the category of private foundation, the organization must not normally receive more than one-third of its support from "gross investment income." Section 509(e)[13] defines gross investment income to mean "income from interest, dividends, rents, and royalties."

All of the provisions described above, except for paragraphs (1) and (5) of section 512(b), were initially enacted or substantially revised by the Tax Reform Act of 1969 (Pub. L. 91–172, 83 Stat. 487). Most of these provisions were enacted by section 101 of that Act, the same section that enacted the investment income tax sought to be applied in the instant case. The remaining provisions, paragraphs (1) and (5) of section 512(b), were part of the matrix within which the Congress enacted the other provisions.

*Evolution of the tax in 1969.*—The excise tax on investment income of private foundations was enacted as part of section 101(b) of the Tax Reform Act of 1969 (Pub. L. 91–172, 83 Stat. 498).

Section 101(a) of H.R. 13270 (the Tax Reform Act of 1969), as passed by the House of Representatives on August 7, 1969 (hereinafter sometimes referred to as the House bill), would have imposed a tax at the rate of 7½ percent of net investment income.[14] Subsection (a) and paragraphs (1), (2), and (4)(A) of subsection (c) of section 4940 as enacted (set forth in the margin *supra* at notes 3, 4, 6, and 7, respectively) follow closely the

---

[13]SEC. 509. PRIVATE FOUNDATION DEFINED.

(e) DEFINITION OF GROSS INVESTMENT INCOME.—For purposes of subsection (d), the term "gross investment income" means the gross amount of income from interest, dividends, rents, and royalties, but not including any such income to the extent included in computing the tax imposed by section 511.

The subsequent amendment of this provision by sec. 2(a)(1), Pub. L. 95–345 (Aug. 15, 1978, 92 Stat. 481) does not affect the taxable year before us (see sec. 2(e) of the 1978 Act, 92 Stat. 483).

[14]The House Ways and Means Committee Report gave the following reasons for seeking to impose this tax:

*"General reasons for change.*—Your committee believes that since the benefits of government are available to all, the costs should be borne, at least to some extent, by all of those able to pay. Your committee believes that this is as true for private foundations as it is for taxpayers generally. Also, it is clear that vigorous and extensive administration is needed in order to provide appropriate assurances that private foundations will promptly and properly use their funds for charitable purposes. This tax, then, may be viewed as being in part a user fee.

"Accordingly, your committee has determined that a minimal tax should be imposed upon the investment income of private foundations. [H. Rept. 91–413 (Part 1), p. 19, 1969–3 C.B. 213.]"

language in the House bill at subsection (a) and paragraphs (1), (2), and (4)(B) of subsection (b) of section 506, respectively.[15] In the House bill, this was an income tax, in chapter 1 of the Internal Revenue Code of 1954.

The House Ways and Means Committee Report explained this provision as follows:

the capital gains and losses to be taken into account are only those on capital assets used to produce income subject to this tax or used to produce unrelated business income (except to the extent such gains and losses are used to compute the tax on unrelated business income). [H. Rept. 91–413 (Part 1) p. 20, 1969–3 C.B. 214.]

Paragraph (4) of section 506(b) provides under subparagraph (A) that in determining net capital gain or loss the basis of property held by the private foundation on December 31, 1969, and continuously thereafter to date of disposition is to be not less than the fair market value on December 31, 1969. Subparagraph (B) provides that the sale or other disposition of property used for the production of investment income or income included in computing the tax imposed by section 511 shall be taken into account, except to the extent that such gain or loss is taken into account for purposes of the tax imposed by section 511 (relating to tax on related [sic] business income). [H. Rept. 91–413 (Part 2) pp. 2–3, 1969–3 C.B. at 341.]

The Senate adopted a different concept for the tax on private foundations. H.R. 13270, as reported by the Senate Finance Committee provided for a tax[16] equal to the greater of $100 or

---

[15]SEC. 506. TAX ON PRIVATE FOUNDATION INVESTMENT INCOME.

(a) IMPOSITION OF TAX.—There is hereby imposed for each taxable year on the net investment income of every private foundation (as defined in section 509) a tax equal to 7½ percent of such income.

(b) NET INVESTMENT INCOME DEFINED.—

(1) IN GENERAL.—For purposes of subsection (a), the net investment income is the amount by which (A) the gross investment income and the net capital gain, exceed (B) the deductions allowed by paragraph (3) and the net capital loss.

(2) GROSS INVESTMENT INCOME.—For purposes of paragraph (1), the term "gross investment income" means the gross amount of income from interest, dividends, rents, and royalties, but not including any such income to the extent included in computing the tax imposed by section 511.

(3) DEDUCTIONS.—For purposes of paragraph (1), there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred for the production or collection of gross investment income or for the management, conservation, or maintenance of property held for the production of such income.

(4) CAPITAL GAINS AND LOSSES.—For purposes of paragraph (1), in determining net capital gain or loss—

\*    \*    \*    \*    \*    \*    \*

(B) There shall be taken into account only the sale or other disposition of property used for the production of interest, dividends, rents, and royalties, and property used for the production of income included in computing the tax imposed by section 511 (except to the extent gain or loss from the sale or other disposition of such property is taken into account for purposes of such tax).

[16]SEC. 4940. AUDIT-FEE TAX.

(a) TAX EXEMPT FOUNDATIONS.—There is hereby imposed on a private foundation which is exempt

one-fifth of 1 percent of the fair market value of all assets other than those being used (or held for use) directly in carrying out the foundation's exempt purpose.[17] The Senate Finance Committee explained this provision as follows:

> The tax base is in general to be the same as the base used for determining the minimum amount such a foundation must distribute currently, as described below in *Distributions of Income*. The base does not include assets used (or held for use) directly in the active conduct of the foundation's charitable activities. In the case of operating foundations (described below) meeting the usual "assets test," substantially more than half of their assets would not be subject to this tax.

> Where the assets include all the stock of a corporation performing a functionally related activity (such as Colonial Williamsburg's Lodge and Inn), then the tax base is not to include those underlying assets which, if held by the foundation directly, would be assets used in the active conduct of the foundation's charitable activities. However, any endowment or other noncharitable assets of the subsidiary corporation, to the extent they are reflected in the value of the stock of the subsidiary, would be included in the base for the private foundation's audit-fee tax. [S. Rept. 91–552, pp. 27–28, 1969–3 C.B. 442.]

The Senate agreed with the approach of the Senate Finance Committee, except that (1) the tax rate was reduced to the greater of $100 or one-tenth of 1 percent[18] for years after 1970, and (2) the Treasury Department was directed to report

---

from taxation under section 501(a) for the taxable year, to compensate for the cost of administering the provisions of this chapter, a tax equal to the greater of $100 or one-fifth of 1 percent of the excess of—

  (1) the aggregate fair market value of all assets of the foundation other than those being used (or held for use) directly in carrying out the foundation's exempt purpose, over

  (2) the acquisition indebtedness (determined under section 514(c)(1), but without regard to the taxable year in which the indebtedness was incurred) with respect to such assets.

This was the revenue equivalent of a tax of somewhat more than 4 percent of net investment income as defined in the House bill.

[17]The Senate Finance Committee Report gave the following reasons for seeking to impose this tax:

"*General reasons for change.*—The committee agrees with the House that private foundations should be subject to substantial supervision, of the type appropriate to their receipt of tax benefits under the Internal Revenue Code. It also agrees that the costs of this supervision should not be borne by the general taxpayer, but rather should be imposed upon those exempt organizations whose activities have given rise to much of the need for supervision. Accordingly, the committee agrees that an annual tax should be imposed upon private foundations."

  \*       \*       \*       \*       \*       \*       \*

"The committee views this tax as a supervisory fee and as an indication of the amount of funds needed by the Internal Revenue Service for proper administration of the Internal Revenue Code provisions relating to private foundations and other exempt organizations. [S. Rept. 91–552, p. 27, 1969–3 C.B 441–442.]"

[18]This was the revenue equivalent of a tax of somewhat more than 2 percent of net investment income as defined in the House bill.

annually on receipts from the tax and on costs of administering the new private foundations tax and regulatory provisions.

The sparse Statement of Managers attached to the Conference Report (H. Rept. 91–782) does not describe the capital gains element of the excise tax on net investment income that the conferees agreed to and that was enacted. The subsequent General Explanation of the Tax Reform Act of 1969, prepared by the Staff of the Joint Committee on Internal Revenue Taxation, explained (at page 29) the Congress' compromise as follows:

*General reasons for change.*—The Congress has concluded that private foundations should share some of the burden of paying the cost of government, especially for more extensive and vigorous enforcement of the tax laws relating to exempt organizations.

However, the Congress believes that private foundations should continue to be exempt from income tax. Accordingly, the Act casts the charge or audit fee for private foundations in the form of an excise tax with respect to the carrying on of the organization's activities, rather than as a tax under chapter 1 of the Internal Revenue Code.

*Explanation of provisions.*—The Act imposes an excise tax of 4 percent upon a private foundation's net investment income. The income subject to this tax includes interest (other than exempt State and municipal bond interest), dividends, rents, and royalties, less the expenses paid or incurred in earning such income. The corporate dividends received deduction is not allowed. Depreciation is limited to straight line and depletion is limited to cost. Certain capital gains are included in full in the base for this tax. Capital losses are allowed only to the extent of gains. Unrelated business income is already taxable under the income tax provisions and so is excluded from the base of this excise tax.

In computing capital gains and losses, the basis for determining gain of property held by the foundation on December 31, 1969 (and continuously thereafter to the date of its disposition) is not less than the fair market value on that date. However, if the usual basis rules produce a higher basis, then they apply. Also, capital gains and losses are taken into account only if incurred on assets used to produce income subject to this tax or used to produce unrelated business income (except to the extent such gains and losses are used to compute the tax on unrelated business income).

*The regulation.*—Section 53.4940–1(f)(1), Foundation Excise Tax Regs., adopted December 29, 1972, by T.D. 7250, 1973–1 C.B. 469, 472, provides as follows:

(f) *Capital gain and losses*—(1) *General rule.* In determining net capital gain for purposes of the tax imposed by section 4940, there shall be taken into account only capital gains and losses from the sale or other disposition of *property held by a private foundation for investment purposes* (other than program-related investments, as defined in section 4944(c)), and property used

for the production of income included in computing the tax imposed by section 511 except to the extent gain or loss from the sale or other disposition of such property is taken into account for purposes of such tax. *For taxable years beginning after December 31, 1972, property shall be treated as held for investment purposes even though such property is disposed of by the foundation immediately upon its receipt, if it is property of a type which generally produces interest, dividends, rents, royalties, or capital gains through appreciation (for example, rental real estate, stock, bonds, mineral interests, mortgages, and securities).* Under this subparagraph, gains and losses from the sale or other disposition of property used for the exempt purposes of the private foundation are excluded. For example, gain or loss on the sale of the buildings used for the exempt activities of a private foundation would not be subject to the section 4940 tax. Where the foundation uses property for its exempt purposes, but also incidentally derives income from such property which is subject to the tax imposed by section 4940(a), any gain or loss resulting from the sale or other disposition of such property is not subject to the tax imposed by section 4940(a). For example, if a tax-exempt private foundation maintains buildings of a historical nature and keeps them open for public inspection, but requires a number of its employees to live in these buildings and charges the employees rent, the rent would be subject to the tax imposed by section 4940(a), but any gain or loss resulting from the sale of such property would not be subject to such tax. However, where the foundation uses property for both exempt purposes and (other than incidentally) for investment purposes (for example, a building in which the foundation's charitable and investment activities are carried on), that portion of any gain or loss from the sale or other disposition of such property which is allocable to the investment use of such property must be taken into account in computing net capital gain for such taxable year. For purposes of this paragraph, a distribution of property for purposes described in section 170(c)(1) or (2)(B) which is a qualifying distribution under section 4942 shall not be treated as a sale or other disposition of property. [Emphasis supplied.]

In Rev. Rul. 74–404, 1974–2 C.B. 382–383, respondent summarized the statute and the regulation. The ruling noted that, by its terms, the regulation applies only to taxable years beginning after December 31, 1972, and concluded as follows: "Accordingly, capital gains realized on the sale of the stock, in the instant case [i.e., "stock donated to it during its taxable years 1970 through 1972 and immediately disposed of upon receipt"], will not be taken into account for purposes of the excise tax imposed by section 4940(a) of the Code."

*Application of the statute.*—The bedrock question is whether petitioner's sale of the Kerr McGee Corp. stock is a "sale * * * of property used for the production of interest, dividends, rents, [or] royalties" within the meaning of section 4940(a).

Petitioner seems to assume that, if we were to hold the

regulation invalid, then petitioner's gain from the sale of its Kerr McGee Corp. stock would not be taxable. However, the statutory language before us is capable of several constructions. For example, we might conclude that the "use" referred to is use of the property by the foundation (as petitioner implicitly contends). On the other hand, we might conclude that use by either the foundation or its donors is sufficient for taxation under section 4940. Alternatively, relying on part 2 of the Ways and Means Committee Report, we might conclude that a holding for investment income consisting of capital gain is sufficient for taxation under section 4940 (here, too, we might conclude that the relevant holding must be that of the foundation alone or that the relevant holding may be that of either the foundation or the donor). As another possibility, we might conclude that the pattern of the statutory materials requires the line to be drawn between the foundation's "charitable assets" and its "noncharitable assets." Other alternatives may suggest themselves after careful perusal of the statute and its legislative history.

In short, it is apparent that there is no single "plain meaning" of the statute, nor does the legislative history point clearly to a single intended result.

It is in this setting that we turn to the interpretive regulation before us, the validity of which is drawn in question by petitioner. This regulation appears to provide a workable set of rules which harmonizes reasonably well the varied considerations—and varied statutory phrases—in section 4940(c)(4)(A) and the related provisions described above. In light of the uncertainty as to the meaning of the statute and the inconclusiveness of the legislative history, we hold that this regulation is a permissible interpretation of the statute insofar as it applies the section 4940(a) tax to petitioner's sale of the Kerr McGee Corp. stock in the year before us.

In rejecting petitioner's interpretation of the statute, we note that that interpretation apparently would have taxability of the gain depend upon whether petitioner had received even a single dividend. Under that approach, the taxation of several years' worth of capital gain would depend on which month during 1973 petitioner happened to hold the stock. Such an eccentric result may be legislated by the Congress. However, we will not lightly assume that the Congress has done so where, as here, the statute does not compel such a result. Cf. *Haserot v. Commissioner*, 41

T.C. 562, 572 (1964), affd. sub nom. *Commissioner v. Stickney*, 399 F.2d 828 (6th Cir. 1968).

Petitioner points out that the regulation, adopted December 29, 1972, applies only to taxable years beginning after December 31, 1972. As respondent made clear in Rev. Rul. 74–404, *supra*, sales such as the one sought to be taxed in the instant case are not treated as taxable if the sales took place in 1970, 1971, or 1972. From this, petitioner concludes that the adoption of the Treasury Department regulation was an illegal exercise of legislative power.

The trouble with this argument is that the Congress has specifically authorized the Treasury Department to promulgate regulations[19] and to determine the extent to which limits will be applied to the retroactivity of any Treasury Department regulation.[20] The regulation before us appears to comport with the powers specifically granted by the Congress to the Secretary of the Treasury or his delegate.

We have concluded that the regulation should be sustained insofar as it seeks to apply the section 4940(a) tax to petitioner's sale of the Kerr McGee Corp. stock in the year before us. Nothing in the record or the briefs suggests any reason why this conclusion should be changed because the regulation was adopted in 1972 rather than any earlier year, or because the regulation first applied to 1973 rather than any earlier year.

We note that the limitation protects those who may have been unaware of the reach of the statute and might have been able to structure their affairs in another manner to avoid the tax[21] without unnecessarily prejudicing the Government's rights *Cameron v. Commissioner*, 68 T.C. 774 (1977).

We are not favored by any explanation as to how petitioner

---

[19]SEC. 7805. RULES AND REGULATIONS.

(a) AUTHORIZATION.—Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary or his delegate shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.

[20]SEC. 7805. RULES AND REGULATIONS.

(b) RETROACTIVITY OF REGULATIONS OR RULINGS.—The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

[21]For example, sec. 53.4940–1(f)(1), Foundation Excise Tax Regs., provides that a qualifying distribution of property under sec. 4942 is not to be treated as a sale subject to the excise tax under sec. 4940.

has been damaged by the Treasury Department's decision to limit the retroactivity of the regulation in question.

On this issue we hold for respondent.

### 2. *Basis in the Stock*

Petitioner contends that if the gain from the sale is subject to the excise tax, then the gain should be measured by the difference between the sales proceeds and the fair market value of the stock as of the date of contribution (Nov. 14, 1973) or, alternatively, the fair market value as of December 31, 1969. Petitioner asserts the invalidity of Treasury Department regulations which provide that the basis is to be determined under the rules of part II of subchapter 0 of chapter 1. Respondent maintains that the appropriate basis of the stock in the hands of petitioner is the basis of the stock in the hands of the donors under sections 1011 and 1015.

We agree with respondent.

This is a case of first impression.

Section 4940(c)(1) (n. 4 *supra*) provides as follows: "Except to the extent inconsistent with the provisions of this section, net investment income shall be determined under the principles of subtitle A." Section 4940(c)(4)(B) (n. 7 *supra*) provides a rule inconsistent with the principles of subtitle A as follows:

(B) The basis for determining gain in the case of property held by the private foundation on December 31, 1969, and continuously thereafter to the date of its disposition shall be deemed to be not less than the fair market value of such property on December 31, 1969.

The Kerr McGee Corp. stock sold by petitioner in December 1973 was not held by petitioner on December 31, 1969; the stock was not held by petitioner until November 1973. Plainly, section 4940(c)(4)(B) does not provide the rule for decision in this case.

Since there is no other relevant provision in section 4940 that is inconsistent with the principles of subtitle A, the basis is to be determined under the principles of subtitle A. See *Beal Foundation v. United States*, 559 F.2d 359 (5th Cir. 1977). Under

sections 1011(a)[22] and 1015(a),[23] the basis for determining gain in the hands of a donee is the carryover basis of the donor.

Section 53.4940–1(f)(2),[24] Foundation Excise Tax Regs. (the regulation challenged by petitioner), provides the same answer—that petitioner's basis in the Kerr McGee Corp. stock is the basis of Ralph and Ruth at the time of their gifts of the stock to petitioner.

Petitioner contends that this regulation is contrary to the intent and language of section 4940 and is, therefore, invalid.

Petitioner states on brief (at page 14) that—

Since the gift of the 334 shares of Kerr McGee Corp. stock to the petitioner on November 14, 1973 resulted in a tax deduction by Mr. and Mrs. Friedman in 1973, (Stip. Par. 16) the basis for the contribution in petitioner's hands should be equal to its fair market value of $30,979.00 on November 14, 1973, the date of the transfer.

Petitioner does not suggest that the gift of the Kerr McGee Corp. stock by Ralph and Ruth was not a gift within the meaning of section 1015(a). Section 1015(a) provides a result inconsistent with the use of the date of gift fair market value as

[22]SEC. 1011. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) GENERAL RULE.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 or other applicable sections of this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses)), adjusted as provided in section 1016.

[23]SEC. 1015. BASIS OF PROPERTY ACQUIRED BY GIFTS AND TRANSFERS IN TRUST.

(a) GIFTS AFTER DECEMBER 31, 1920.—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period before the date of the gift as provided in section 1016) is greater than the fair market value of the property at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. If the facts necessary to determine the basis in the hands of the donor or the last preceding owner are unknown to the donee, the Secretary or his delegate shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Secretary or his delegate finds it impossible to obtain such facts, the basis in the hands of such donor or last preceding owner shall be the fair market value of such property as found by the Secretary or his delegate as of the date or approximate date at which, according to the best information that the Secretary or his delegate is able to obtain, such property was acquired by such donor or last preceding owner.

[24](2) *Basis*. (i) The basis for purposes of determining gain from the sale or other disposition of property shall be the greater of:

(A) Fair market value on December 31, 1969, plus or minus all adjustments after December 31, 1969, and before the date of disposition under the rules of Part II of Subchapter O of Chapter 1, provided that the property was held by the private foundation on December 31, 1969, and continuously thereafter to the date of disposition, or

(B) Basis as determined under the rules of Part II of Subchapter O of Chapter 1, subject to the provisions of section 4940(c)(3)(B) (and without regard to section 362(c)).

(ii) For purposes of determining loss from the sale or other disposition of property, basis as determined in subdivision (i)(B) of this subparagraph shall apply.

petitioner's basis. Nothing in section 4940 provides for the use of fair market value on the date of the gift under these circumstances. We conclude that petitioner's basis in the Kerr McGee Corp. stock is not the fair market value of that stock on the date of the gifts to petitioner by Ralph and Ruth.

For its alternative argument, petitioner quotes from Rev. Rul. 76–424, 1976–2 C.B. 367, 368, as follows: "The purpose of the section 4940(c)(4)(B) and section 53.4940–1(f)(2)(i) rules regarding the basis of property for computing capital gain is to avoid taxing appreciation of property prior to the enactment of the taxing statute."

Whether or not that ruling is a correct statement of the law with respect to the narrow issue presented in the ruling, the statement as to purpose of the statute has no foundation in the legislative history of the Tax Reform Act of 1969. It is far more likely that the purpose of this provision in the statute was to recognize that, in 1969, most foundations did not have any record of their donors' bases in assets that had been contributed to the foundations and were still being held by the foundations. The rules were being changed for the future and foundations would have to comply with these rules as to property that they were to acquire in the future. See Shrekgast, Problems Present in the Receipt of Property Other than Cash, 11 N.Y.U. Conf. Charitable Foundations 259, 263–264 (1973).

The statute is clear. Section 53.4940–1(f)(2)(i)(B) Foundation Excise Regs., is consistent with the statute (if not actually compelled by the statute, see *Beal Foundation v. United States, supra,* 559 F.2d at 363–364) and, as applied to this case, is valid.

On this issue we hold for respondent.

*Decision will be entered under Rule 155.*