## ZEMURRAY FOUNDATION

v.

## UNITED STATES of America.

### Civ. A. No. 79–1088.

United States District Court,
E. D. Louisiana.

March 9, 1981.

Thomas B. Lemann, Monroe & Lemann, New Orleans, La., for plaintiff.

Jean E. Kilpatrick, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK M. GORDON, District Judge.

An excise tax on the net investment income of private foundations is imposed under the provisions of 26 U.S.C. § 4940. In 1974, plaintiff, the Zemurray Foundation, sold its undivided one-half interest in approximately 12,746 acres of timber land in Tangipahoa Parish, Louisiana. Subsequent to and as a result of that sale, the Commissioner of Internal Revenue assessed an excise tax against plaintiff pursuant to 26 U.S.C. § 4940.

The Zemurray Foundation contends that the tax and the additional penalties and interest imposed by the Internal Revenue Service were erroneously and illegally assessed. In furtherance of that contention the plaintiff has filed suit against the defendant, the United States of America, seeking a refund of all amounts paid because of the assessment, as well as interest and costs.

## FINDINGS OF FACT

### A.

The pertinent facts in the instant case are uncontested and have been stipulated to by the parties in the Pre-Trial Order. The following statement of facts is taken from that order:

1. Zemurray Foundation is a Louisiana non-profit corporation.

2. Samuel Zemurray died on November 30, 1961.

3. Zemurray Foundation received a bequest from Samuel Zemurray of the naked ownership of an undivided one-half interest in approximately 12,746 acres of timberland in Tangipahoa Parish, Louisiana.

4. Sarah W. Zemurray was the widow of Samuel Zemurray and was born on December 13, 1883.

5. Samuel Zemurray bequeathed Mrs. Zemurray a usufruct for her life of his undivided one-half community interest in the tract of land.

6. Mrs. Zemurray had full ownership interest of the other undivided one-half.

7. Zemurray Foundation received possession of its naked ownership in the undivided one-half interest in the tract of land under a Judgment of Possession dated June 16, 1970.

8. On February 16, 1974, Mrs. Zemurray donated to Zemurray Foundation the usufruct, which she had inherited from her husband, of his undivided one-half interest.

9. After Mrs. Zemurray's donation of February 16, 1974, Zemurray Foundation held full ownership of an undivided one-half interest in the land.

10. On February 21, 1974 Zemurray Foundation entered into an agreement to sell its interest in the land to an unrelated third party.

11. The sale was consummated in June of 1974.

12. The only income produced by the land from 1969 through 1974 was from timber sales.

13. The income from timber sales for those years is as follows:

| | |
|---|---|
| 1969 | 44,475.10 |
| 1970 | 15,771.42 |
| 1971 | 149,584.44 |
| 1972 | 120,677.61 |
| 1973 | 227,911.88 |
| 1974 | 19,077.08 |

14. All of the income from timber sales went entirely to Mrs. Zemurray as usufructuary.

15. There were no timber sales between February 16, 1974, and the date the property was sold to the unrelated third party. No income was produced from the property during that period.

16. Zemurray Foundation never received any income from the property at any time (except the proceeds from the sale of its interest.)

17. The timberland was not property of a type that generally produces interest or dividends and did not produce interest or dividends.

18. The timberland did not produce rents or royalties during the period in which plaintiff had an interest in it.

19. The timberland was managed by a forestry consulting and appraisal firm.

20. The land is the type of property that generally produces capital gains through appreciation.

21. The value of a one-half interest in the tract of land as of December 31, 1969 was $2,716,540.00.

22. Plaintiff received $5,525,000 for its one-half interest in June of 1974. It had expenses of $554.

23. On March 31, 1978, Commissioner of Internal Revenue assessed an excise tax deficiency against Zemurray Founda-

tion under section 4940 of the Federal Internal Revenue Code of 1954, as amended, of $112,317.00 plus interest of $23,797.62 for 1974 on account of the sale by Zemurray Foundation of its undivided one-half interest in the tract of land to the unrelated third party.

24. The Commissioner of Internal Revenue based the assessment of the excise tax deficiency on the contention that the sale of its undivided one-half interest by Zemurray Foundation in 1974 resulted in Zemurray Foundation's recognizing additional net investment income for 1974.

25. On or about April 21, 1978, Zemurray Foundation paid the assessed deficiency in the amount of $112,317.00.

26. On or about May 23, 1978, Zemurray Foundation paid interest in the amount of $23,797.62.

27. On July 3, 1978, the Internal Revenue Service assessed a failure to pay penalty of $561.59 and interest of $200.52. Both assessments were based on the Service's contention that plaintiff had failed to pay the assessments within 10 days of notice and demand without reasonable cause.

28. On or about June 6, 1978, Zemurray Foundation paid the additional interest and failure to pay penalty in the total amount of $762.11.

29. Zemurray Foundation's total payments to the Internal Revenue Service aggregate $136,876.73.

30. On or about August 24, 1978, Zemurray Foundation filed a claim for refund in the amount of $136,876.73 together with any interest legally due.

31. The Commissioner of Internal Revenue has neither approved nor disallowed this claim of refund.

**B.**

It is not necessary to the instant action that the Court decide whether or not the land was of a type that generally produces rents or royalties.

## CONCLUSIONS OF LAW

### I.

This is a suit for the recovery of excise taxes that the plaintiff alleges to have been erroneously and illegally assessed. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(a)(1).

### II.

During 1974, plaintiff, the Zemurray Foundation, was a tax-exempt private foundation subject to tax on its net investment income under the provisions of 26 U.S.C. § 4940(a) (1974), *as amended*, 26 U.S.C. § 4940(a), (c)(2) (1978), (c)(1) and (4) (1976).[1]

### III.

Net investment income [2] is defined as the amount by which the sum of the gross investment income and the net capital gain exceeds the allowable deductions.

"Gross investment income" is "the gross amount of income from interest, dividends, rents, and royalties . . . ."[3]

In determining "net capital gain," § 4940(a)(4)(A) states in pertinent part that: "(A) There shall be taken into account only

---

1. 26 U.S.C. § 4940(a) states: "(a) Tax-exempt foundations. There is hereby imposed on each private foundation which is exempt from taxation under section 501(a) for the taxable year, with respect to the carrying on of its activities, a tax equal to 4 percent of the net investment income of such foundation for the taxable year."

(The portions of 26 U.S.C. § 4940 and Internal Revenue Commission Regulation § 53.4940–1 cited herein are presented as they existed in 1974, the year in which the taxes at issue were assessed.)

2. "(c) Net investment income defined.

(1) In general. For purposes of subsection (a), the net investment income is the amount by which (A) the sum of the gross investment income and the net capital gain exceeds (B) the deductions allowed by paragraph (3). Except to the extent inconsistent with the provisions of this section, net investment income shall be determined under the principles of subtitle A." 26 U.S.C. § 4940(c)(1).

3. 26 U.S.C. § 4940(c)(2).

gains and losses from the sale or other disposition of property used for the production of interest, dividends, rents, and royalties . . . ."

## IV.

The Internal Revenue Commission has issued a Regulation pursuant to § 4940 which attempts in part to clarify the term "net capital gains." That regulation, Treas.Reg. § 53.490–1(f)(1) (1974), provides that:

In determining net capital gain for purposes of the tax imposed by section 4940, there shall be taken into account only capital gains and losses from the sale or other disposition of property held by a private foundation for investment purposes (other than program-related investments, as defined in section 4944(c)), and property used for the production of income included in computing the tax imposed by section 511 except to the extent gain or loss from the sale or other disposition of such property is taken into account for purposes of such tax. For taxable years beginning after December 31, 1972, property shall be treated as held for investment purposes even though such property is disposed of by the foundation immediately upon its receipt, if it is property of a type which generally produces interest, dividends, rents, royalties, or capital gains through appreciation (for example, rental real estate, stock, bonds, mineral interests, mortgages, and securities).

## V.

As stipulated, the property in the instant case did not produce interest, dividends, rents or royalties during the time period in which plaintiff had an interest in it. Plaintiff held only a naked ownership interest in the property from 1961 to February 16, 1974. During that time, the only income produced by the land was from timber sales. Additionally, there were no timber sales and no income was produced from the property during the period that plaintiff held full ownership of its undivided one-half interest in the land and prior to plaintiff's sale of that interest.

Plaintiff argues that because the property was not "used" for the production of interest, dividends, rents or royalties during the time period that the Zemurray Foundation had an interest in the property, its sale of that property did not give rise to the type of capital gain that Congress sought to have included within the § 4940 excise tax.

Defendant argues, on the other hand, that the statutory language in § 4940 is ambiguous in regard to what is and what is not considered to be a "net capital gain" within the meaning of "net investment income." Defendant contends that such ambiguity is resolved by Regulation § 53.4940–1(f)(1), and that under the provisions of that regulation the assessment of the excise tax in question was proper.

## VI.

26 U.S.C. § 4940(c)(4)(A) allows consideration in a determination of net capital gains of "only gains and losses from the sale or other disposition of property used for the production of interest, dividends, rents, and royalties. . . ." (emphasis added) Defendant contends that the ambiguity within the statute lies in its utilization of the word "used." Defendant argues that the term "used" may refer to property "actually used for the production . . ." or to property "of a type used for the production of interest, dividends, rents and royalties." It is submitted that in light of such ambiguity, Reg. § 53.4940–1(f)(1) should be upheld as a permissible clarification of the terms of the statute.

## VII.

This Court does not find the defendant's argument to be persuasive and is not swayed by defendant's sophistic attempt to have the interpretation of the word "used" changed from its ordinary, common sense meaning. "Used" in its ordinary sense means actually used. To say, as the defendant would have this Court say, that "used" means "susceptible of use" and that property which is merely *susceptible* of use

for the production of interest, dividends, rents, and royalties shall be considered in the determination of net capital gains when such property is sold, is tenuous. For in interpreting the definition of "used" to mean "susceptible of use", the Commissioner is required to add another exception to its regulation and that is that property which was used for the foundation's exempt purposes is excluded from inclusion in "net capital gains" when such property is either sold or disposed of. Without such an exclusion, under the defendant's interpretation of the statute, a foundation's sale of its charitable headquarters might be subject to taxation because its building would be susceptible of use as being rented out for profit. While as a final result that may be desirable, the multiple exceptions and contortions in logic that the Commissioner has to go through to reach that result cannot be supported.

### VIII.

█ Reg. § 53.4940–1(f)(1) which defines the net capital gains subject to taxation under § 4940 also goes beyond the bounds of Congressional authorization and in so doing is at odds with the limited taxable areas delineated in the statute. Specifically, the regulation is overly broad in three areas.

First, Section 4940(c)(4) limits the capital gains subject to taxation to gains resulting from the sale of property "used" for the production of interest, dividends, rents, and royalties. Regulation § 53.4940–1(f)(1) expands the statute by including capital gains resulting from the sale of property "held" for investment purposes within the parameters of the tax. Property is treated as held for investment purposes if it is of a type which "generally produces" interest, dividends, rents, royalties or capital gains through appreciation. The regulation is overly expansive in that it allows taxation of gains from the sale of property regardless of whether that property was used for the production of interest, dividends, rents, or royalties, as long as the property is of a type which "generally produces" the afore-

mentioned revenue. As a result, the regulation negates the statute's requirement that the property be "used" for the production of such income.

Secondly, Reg. § 53.4940–1(f)(1) treats property as being "held" for investment purposes, and therefore subject to taxation, even though such property is disposed of by the foundation immediately upon its receipt. The statute requires that the property be "used" for the production of interest, dividends, rents, and royalties in order to be considered as a net capital gain. To the extent that the regulation allows the taxation of gains or losses resulting from the sale of property merely "held" but never "used" by the plaintiff to produce the specified types of income it is overly broad.

The property in question was not used for the production of interest, dividends, rents, or royalties from 1961 through 1974, the years that the plaintiff had an interest in the property. The failure of the foundation to so use the property for such an extended time takes the gain or loss resulting from its sale outside of the realm of taxation under § 4940.

Additionally, Reg. § 53.4940–1(f) is overly expansive in its listing of the types of property the sale of which results in taxable capital gains. The tax under Section 4940(c)(4)(A) is restricted to gains or losses on property used for the production of "interest, dividends, rents, and royalties." The regulation, however, adds property which produces "gains through appreciation" to that list. Thus, in determining net capital gains, Reg. § 53.4940–1(f) allows consideration of gains and losses from the sale or other disposition of property which is of a type which "generally produces interest, dividends, rents, royalties, or capital gains through appreciation (for example, rental real estate, stock, bonds, mineral interests, mortgages, and securities)."

Section 4940(c)(4) limits the capital gains that are subject to taxation to gains resulting from the sale or disposition of four types of property. The General Explanation of the Joint Tax Reform Act of 1969, prepared by the staff of the Joint Commit-

tee on Internal Revenue Taxation states at page 30 that *"certain* capital gains are included in full in the base for this tax." (emphasis added) To the extent that Reg. § 53.4940–1(f)(1) seeks to add property of a type which generally produces "capital gains through appreciation" to that list it cannot be upheld. Such an expansion of the types of property subject to taxation under the Act goes beyond the limitations imposed by Congress in enactment of the statute.

### IX.

Insofar as this Court and counsel are able to determine, the issues presented in this case have been examined in only one previously reported case. In *Friedman Foundation, Inc. v. Commissioner*, 71 T.C. 40 (1978), the Tax Court examined and upheld the validity of Reg. § 53.4940 in relation to a private foundation's receipt and disposition of shares of stock. In so doing, the Court held that there was "no 'plain meaning' of the statute. . ." and that the "regulation appears to provide a workable set of rules which harmonizes reasonably well [with] the varied considerations and varied statutory phrases in section 4940(c)(4)(A). . ."

This Court, however, for the aforementioned reasons is unable to reach the same conclusions as were drawn in the *Friedman* case.[4] Rather, it is held that in the instant case only gains or losses on property actually "used" by the foundation for the production of "interest, dividends, rents, and royalties" can be considered as net capital gains subject to taxation under § 4940.

### X.

The property at issue was not used by the plaintiff from 1961 through 1974, the period in which plaintiff held an interest in the property, for the production of interest, dividends, rents or royalties. Plaintiff's sale of the property was accordingly not the type of "investment income" subject to taxation under § 4940 and the imposition of the excise tax on the sale of the property, as well as the resulting penalties and interest, was not properly made.

IT IS THEREFORE ORDERED that judgment be entered in accordance with this opinion, in favor of the plaintiff, the Zemurray Foundation, and against the defendant, the United States of America, in the amount of $136,876.73 plus statutory interest thereon from the dates of payment.

---

4. For an excellent discussion and critique of the *Friedman* case, insofar as it relates to validity of Reg. 53.4940–1(f)(1), see Richardson & Jewett, Is Stock Donated to a Foundation and Resold Right Away a Taxable Investment Asset? 50 J. Taxation 110, February, 1979.