**BALSO FOUNDATION**

v.

**UNITED STATES of America.**

**Civ. No. N 77–85(WWE).**

United States District Court,
D. Connecticut.

Sept. 14, 1983.

---

Jon T. Hirschoff, of Tyler, Cooper & Alcorn, New Haven, Conn., for plaintiff.

V. James Ferraro, Tax Div., U.S. Dept. of Justice, Washington, D.C., and Barry K. Stevens, Asst. U.S. Atty., Bridgeport, Conn., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

EGINTON, District Judge.

The plaintiff, Balso Foundation ("Balso"), brings this suit as a taxpayer seeking a refund of taxes paid. Balso and the United States agree on the facts as set forth below and both have moved for summary judgment.

In late 1971, the Ball and Socket Manufacturing Co. ("Ball and Socket") established Balso as a private foundation exempt from taxation by 26 U.S.C. § 501(a). Balso's sole asset was 51.42 acres of land in Cheshire, Connecticut, which Ball and Socket donated. Since acquiring the land in 1946, Ball and Socket made no use of it other than to let the Girl Scouts use it from 1950 to 1957 as a summer day camp. While there was a lease agreement requiring the Girl Scouts to pay one dollar a year for the use of the land, it is questionable that this was ever paid. There is no question that when Balso sold the land for $250,000 in May, 1973, it was still wooded and unimproved, and Balso had done nothing with the land except to sell it and had received no profits or produce from the land other than the proceeds of the sale.

Balso filed a Return of Private Foundation Exempt From Income Tax on May 13, 1974, and paid taxes of $10,508, $10,000 of which was a four percent excise tax on the sale of the land. The excise tax was arguably required by 26 U.S.C. § 4940 ("Section 4940" or "the statute").[1]

Balso filed a claim for refund, which the District Director of the Internal Revenue Service denied. The District Director relied primarily on Treasury Regulation § 56.4940–1(f), 26 C.F.R. § 59.4940–1(f) ("the regulation")[2] in concluding that the

---

**1.** In 1973, Section 4940 imposed a tax "equal to 4 percent of the net investment income" of an exempt foundation. Section 4940(c)(4)(A) defined net capital gain (now "capital gain net income") as follows:

There shall be taken into account only gains and losses from the sale or other disposition of property used for the production of interest, dividends, rents, and royalties, and property used for the production of income includ-

ed in computing the tax imposed by section 511 (except to the extent gain or loss from the sale or other disposition of such property is taken into account for purposes of such tax).

**2.** In 1973, the regulation provided, in relevant part:

In determining net capital gain for purposes of the tax imposed by section 4940, there shall be taken into account only capital gains and

sale of this land was taxable because "Land is property of a type which generally produces rents and/or capital gains through appreciation."

Balso filed this action in 1977. A United States magistrate denied cross-motions for summary judgment in 1980, and this court adopted that ruling. The magistrate reasoned that a factual issue remained as to whether this land was of the type specified. The parties renewed their motions in April and May of this year in light of cases decided since the 1980 ruling. The magistrate again denied these motions on the ground that factual issues remain.

Balso argues first that this wooded, unimproved land is not the type which generally produces interest, dividends, rents or royalties. Balso leaves out a fifth category, set forth in the implementing regulations, that is, whether this is the type of property which generally produces capital gains through appreciation.

While the magistrate saw this as a factual issue, the parties have agreed on the underlying facts regarding the history and use of the land and now require a ruling as a matter of law as to whether those facts support the District Director's conclusion. This court agrees with the District Director that this land was property of the type which generally produces capital gains through appreciation.

The regulation lists as examples of the types of property which generally produce capital gains through appreciation the following: rental real estate, stock, bonds, mineral interests, mortgages, and securities. The District Director concluded that land is property of this type. Balso argues that if *all* land fell within the category of

property which generally produces capital gains, the regulation would simply list "real estate" rather than "rental real estate" as an example of the type of property to be included. The government counters that rental real estate is only an example of what is to be included, and is not intended to exclude other types of real estate. The court need not decide whether all land is the type which generally produces capital gains through appreciation. Both parties agree that this land *did* produce capital gains through appreciation and, *a fortiori*, it must be of such a type.

Balso next argues that this fifth category, property of the type which generally produces capital gains, is an impermissible expansion of the intended coverage of the statute. The regulation is entirely consistent with Congressional intent. *See Zemurray Foundation v. United States*, 687 F.2d 97, 102 (5th Cir.1982) (district court erred in holding that the regulation is invalid to the extent it subjects to tax property of the type which generally produces capital gains through appreciation).[3]

In any event, this court concludes that the land in question also falls within the category of "property of the type which generally produces rents." Balso argues repeatedly that this land is not the type which generally produces rent, since it is wooded and unimproved and rents were never actually collected on it. Balso misreads the statute. The question is not whether this land is the type of land which generally produces rents. The question, as the court reads the regulation, is whether land is the type of property which generally produces rents. The distinction is not

losses from the sale or other disposition of property held by a foundation for investment purposes.... For taxable years beginning after December 31, 1972, property shall be treated as held for investment purposes even though such property is disposed of by the foundation immediately upon its receipt, if it is property of a type which generally produces interest, dividends, rents, royalties, or capital gains through appreciation (for example, rental real estate, stock, bonds, mineral interests, mortgages, and securities).

3. In *Zemurray*, the district court had held that the fifth category would cover the property at issue, but found further that the fifth category was invalid. Given the Court of Appeal's conclusion that the fifth category is valid, this court cannot understand that court's remand of the case for further factual findings. As Judge Gee observed in dissent, "If [the district court] erred and the added category is valid, it seems to me that the majority should reverse and uphold the imposition of the tax, obviating the need for a remand."

between different types of land, but between land and other types of property.

Thus, in his dissent in *Zemurray Foundation, supra*, 687 F.2d at 103 n. 1, Judge Gee drew a distinction between such items as jade figurines or ornate silver chalices and types of property which generally produce "interest, dividends, rents [or] royalties." Judge Gee would hold invalid the fifth category of the regulation because it could reach such things as jade figurines and therefore, in his view, impermissibly extends the coverage of the statute. Under even Judge Gee's restrictive analysis, however, land, unlike jade figurines, could be taxed as property which generally produces rents, should the regulation's fifth category be invalidated.

Balso challenges another aspect of the regulation. By reaching property "of the type which generally produces" one of the listed benefits, the regulation taxes property *usable* for one of those purposes. The statute itself mentions only property "used" for one of the listed purposes. This court agrees with the majority in *Zemurray Foundation, supra*, 687 F.2d at 99–102, and with the Tax Court in *Friedman Foundation, Inc. v. Commissioner*, 71 T.C. 40, 50 (1978), that Congress intended to impose an excise tax on the "noncharitable assets" of a private foundation, and intended to exclude only "charitable assets" from the excise tax. While the statute is inartfully drawn, the regulation is not inconsistent with it or overly broad. *See Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 101 S.Ct. 1037, 67 L.Ed.2d 140 (1981) (Treasury Regulation presumed valid unless unreasonable and plainly inconsistent with the statute).

The defendant's motion for summary judgment is therefore GRANTED and the taxpayer's motion for summary judgment DENIED.

So Ordered.