**GREENACRE FOUNDATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 536–83T.**

United States Claims Court.

Sept. 13, 1984.

Leonard L. Silverstein, Washington, D.C., with whom were Deborah M. Beers and Silverstein & Mullens, Washington, D.C., for plaintiff.

Stella A. Gieseler, Dept. of Justice, Tax Div., Washington, D.C., with whom were Asst. Attys. Gen. Glenn L. Archer, Jr. and Theodore D. Peyser, Jr., Washington, D.C., for defendant.

ORDER

KOZINSKI, Chief Judge.

### Facts

Plaintiff Greenacre is a private foundation under the terms of the Internal Revenue Code. 26 U.S.C. §§ 501(c)(3), 508(b) (1982). Commendably true to its name, it operates a public "pocket" park on 51st Street in New York City. In 1974 and 1975 plaintiff received several donations consisting of appreciated stock. On each occasion, plaintiff sold the stock within a month of receiving it, devoting the proceeds to its tax-exempt activities. The parties have stipulated that plaintiff never intended to hold the stock for investment purposes.

Section 4940(a) of the Internal Revenue Code imposes an excise tax on the "net investment income" of private foundations. Net investment income includes the capital gains earned "from the sale or other disposition of property used for the production of interest, dividends, rents, and royalties." 26 U.S.C. § 4940(c)(4) (1982). Treasury regulations provide that gains will be subject to the excise tax if the property is "of the type which generally produces interest, dividends, rents, royalties, or capital gains through appreciation." Treas.Reg. § 53.-4940–1(f)(1). Plaintiff argues that the regulation is invalid insofar as it purports to tax capital gains earned on stock sold by the foundation promptly after it receives it as a gift and which the foundation never uses for investment purposes.

### Discussion

There is much to plaintiff's argument. Section 4940(a) taxes "net investment income." Capital gains are included in computing such income only if derived from the sale of property "used for the production of" interest, dividends, etc. The most plausible reading of this language would limit the imposition of the tax to those situations where the gains were derived from the sale of property that the foundation had acquired or maintained for investment purposes. The approach adopted by the regulations—imposition of the tax whether or

not the property was held for investment purposes—strains the statutory language which calls for taxation only where the property is "used" for the production of investment income. Moreover, there is doubt as to how well the regulation serves the purposes of the statute. The Tax Reform Act of 1969, Pub.L. No. 91–172, § 4940, 83 Stat. 487, 498 (1969), which first imposed this tax, was designed to curb certain abuses by private foundations and to assure "that investments of these organizations are not jeopardized by financial speculation." H.R.Rep. No. 91–413, 91st Cong., 1st Sess., *reprinted in* 1969 U.S. Code Cong. & Ad.News 1645, 1648; S.Rep. No. 91–552, 91st Cong., 1st Sess., *reprinted in* 1969 U.S.Code Cong. & Ad.News 2027, 2032. It is difficult to discern how these purposes will be served by imposing a tax on investment property held by the foundation only because it happens to have received a gift in that form, particularly where the foundation disposes of the property at the first reasonable opportunity.

Plaintiff's arguments would make this a very close case if the court were writing on a clean slate. However, the regulation has now been upheld three times over identical or similar challenges. *See Friedman Foundation, Inc. v. Commissioner,* 71 T.C. 40 (1978); *Zemurray Foundation v. United States,* 687 F.2d 97 (5th Cir.1982); *Balso Foundation v. United States,* 573 F.Supp. 191 (D.Conn.1983). The only court to strike down the regulation was reversed on appeal. *Zemurray Foundation v. United States,* 509 F.Supp. 976 (E.D.La. 1981), *rev'd,* 687 F.2d 97 (5th Cir.1982). Moreover, the regulation has been in effect for 11 years. During that time, Congress has amended the statute four times, two of those after the Tax Court's decision in *Friedman Foundation.* Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 302(a), 98 Stat. 494, 779 (1984); Revenue Act of 1978, Pub.L. No. 95–600, § 520, 92 Stat. 2763, 2884 (1978); Act of Aug. 15, 1978, Pub.L. No. 95–345, § 2(a)(4), 92 Stat. 481, 481 (1978); Tax Reform Act of 1976, Pub.L.

No. 94–455, § 1301, 90 Stat. 1523, 1713 (1976). *Friedman Foundation*—decided six years ago—analyzed the statute and its legislative history and concluded that the regulation was a proper exercise of the Secretary's rulemaking authority. If Congress disagreed, it had ample time and opportunity to say so. While it may overstate the case to suggest that Congress implicitly adopted the regulation by its inaction, *but see Helvering v. Winmill,* 305 U.S. 79, 83, 59 S.Ct. 45, 46, 83 L.Ed. 52 (1938), it is fair to say that whatever tension may exist between the regulation and the statute did not merit an expression of congressional disapproval.

A taxpayer must carry a heavy burden in persuading the court that a Treasury regulation is invalid. *See Commissioner v. Portland Cement Co.,* 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981). Regulations must be upheld unless they are "unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948). The consistent judicial decisions upholding the regulation, coupled with congressional acquiescence over a number of years, renders it impossible to conclude at this late date that the Secretary's interpretation of the statute is so unreasonable as to violate this stringent standard.

## Conclusion

Plaintiff's motion for summary judgment is denied; defendant's motion for summary judgment is granted. The clerk is directed to dismiss the complaint.

No costs.